UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETRINA L. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:17-CV-0556-G |
| DALLAS CITY ATTORNEY'S OFFICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss (docket entry 12) and the plaintiff's motion for leave to amend her complaint (docket entry 14). For the reasons stated below, the defendant's motion is granted, and the plaintiff's motion is denied.

## I. BACKGROUND

### A. Factual Background

The plaintiff, Petrina L. Thompson ("Thompson"), brings this action against the defendant, the Dallas City Attorney's Office ("the City"), for unlawful employment practices and discrimination on the basis of race, color, age, and gender.

Plaintiff's Original Complaint ("Complaint") at 1 (docket entry 1).  Thompson began working for the City in October 2011 as an Assistant City Attorney in the Domestic Violence Unit.  *Id.* ¶ 4.  Thompson alleges that Fredrick Williams ("Williams"), the chief prosecutor who had hired her, sexually harassed her from the onset of her employment by repeatedly asking her to be his girlfriend and telling her that he "didn't want to hire [her] because he wanted to date [her] instead."  *Id.* ¶¶ 5-6 (alteration in original).  Despite acquiescing to a relationship with Williams, Thompson attempted to end the relationship shortly afterwards.  *Id.* ¶¶ 6-7.

In response, Thompson alleges, Williams became angry, physically attacked her, and subsequently began a retaliation campaign against her in the workplace.  *Id.* ¶¶ 7-8.  Among other acts, Williams increased his sexual advances towards her; her work mysteriously disappeared from her cubicle; she handled more work than similarly-situated attorneys; and she was mocked by staff and employees because of her age.  *Id.* ¶ 8.  Thompson claims that by 2014 this behavior had become "accepted and condoned by virtually all employees."  *Id.* ¶ 12.

Around October 2014, Thompson filed a complaint with the human resources office, and at some point afterwards, Williams resigned.  *Id.* ¶¶ 16, 18.  However, Thompson asserts that the retaliation and harassment continued.  *Id.* ¶ 18.  In December 2014, Thompson was called into a meeting with three superiors who allegedly blamed Thompson for the hostile work environment and informed her that

- 2 -

she would be transferred to the General Litigation Division.  *Id.* ¶ 19.  Once in the General Litigation Division, Thompson continued to suffer harassment and disparate treatment:  she was given "busy work," denied a standard paralegal or secretary, and refused training.  *Id.* ¶ 21.  Thompson also claims that she was paid less than similarly-situated male attorneys.  *Id.* ¶ 23.  After one year in this division, Thompson was terminated with the explanation, "[i]t just isn't working out."  *Id.* ¶ 22.

B.  Procedural Background

On December 8, 2016, Thompson filed suit in the 192nd District Court of Dallas County, Texas, alleging employment discrimination and retaliation in violation of Texas Labor Code §§ 21.051 and 21.055.  Original Petition ¶ 26 (No. DC-16-15685); *see also* First Amended State Petition ("Amended State Petition") ¶ 26 (No. DC-16-15685).[1]

On February 26, 2017, Thompson filed the instant suit, asserting claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.  Complaint at 7-9.  In addition, she brings a gender-based pay disparity claim under the Equal Pay Act ("EPA").  *Id.* at 9. On March 21, 2017, the City filed a motion to dismiss based on arguments of improper claim-splitting between the two suits, and because the Dallas City

---

[1]     All documents referencing case number DC-16-15685 are available at https://courtsportal.dallascounty.org/DALLASPROD/.

- 3 -

Attorney's Office lacks the legal capacity to be sued.  Defendant's Motion to Dismiss and Brief in Support ("Motion to Dismiss") at 1 (docket entry 12).  The same day, the City filed a motion for summary judgment in the state court action because Thompson had failed to serve process within the limitations period.  Defendant's Motion for Summary Judgment ("Motion for Summary Judgment") at 1 (No. DC-16-15685).  The state court proceeded to grant the City's motion for summary judgment on April 18, 2017.  Order and Final Judgment ("State Court Order and Final Judgment") (No. DC-16-15685).  On June 16, 2017, the state court denied Thompson's ensuing motions for reinstatement and a new trial.  Order -- Deny (1) (No. DC-16-15685); Order -- Deny (2) (No. DC-16-15685).

Meanwhile, in the instant case, Thompson filed a response to the City's motion to dismiss on April 10, 2017.  Plaintiff's Response to Defendant's Motion to Dismiss and Brief in Support ("Plaintiff's Response") (docket entry 13).  On April 16, 2017, Thompson also filed a motion for leave of court to amend her complaint to name the proper defendant, the City of Dallas.  Plaintiff's Motion for Leave of Court to Amend Complaint ("Plaintiff's Motion to Amend") (docket entry 14).  The City replied to Thompson's response on April 24, 2017, emphasizing the applicability of *res judicata* to this case as a result of the summary judgment entered

- 4 -

by the state court.[2]  Defendant's Reply in Support of Its 12(b)(6) Motion to Dismiss

("Defendant's Reply") at 4-6  (docket entry 15).  The City also filed a timely

response to Thompson's motion to amend, to which Thompson filed a timely reply.

Defendant's Response in Opposition to Plaintiff's Motion for Leave to Amend

Complaint ("Defendant's Response") (docket entry 16); Plaintiff's Reply to Motion

for Leave of Court to Amend Complaint ("Plaintiff's Reply") (docket entry 17).  The

motions are now ripe for decision.

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  *Rule 12(b)(6) Motion to Dismiss*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

---

[2]     While the City did not emphasize *res judicata* in its motion to dismiss, the parties have had ample opportunity to brief the issue in both the City's motion to dismiss and Thompson's motion for leave to amend.

(internal quotation marks, brackets, and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678.  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

- 6 -

misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" her claims "across the line from conceivable to plausible."  See *id.* at 679, 683.

Moreover, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Therefore, the court may rely on the 192nd District Court's decision and public records in deciding the instant motion to dismiss.

### 2.  *Rule 15 Motion for Leave to Amend Complaint*

Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2); see also *Foman v. Davis*, 371 U.S. 178 (1962) ("[L]eave to amend 'shall be freely given when justice so requires.'").  Whether a motion to amend should be granted is within the discretion of the district court.  *Id.* at 182.  When exercising its discretion, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of the amendment, etc . . . ."
*Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1150-51 (5th Cir. 1990)
(quoting *Foman*, 371 U.S. at 182).  A motion for leave should not be denied "unless
there is a substantial reason to do so."  *Leffall v. Dallas Independent School District*, 28
F.3d 521, 524 (5th Cir. 1994).

### B.  Application

#### 1.  *Rule 12(b)(6) Motion to Dismiss*

##### a.  Res Judicata

The City contends that the doctrine of *res judicata* bars all of Thompson's
claims because there was a prior final judgment on the merits and the claims in both
suits are based on the same nucleus of operative fact.[3]  Defendant's Reply at 4.
Thompson denies that there was a final judgment on the merits and argues that her
Equal Pay Act ("EPA") claim does not rely on the same operative facts as her state
claims.[4]  Plaintiff's Reply at 3; Plaintiff's Response at 6.

_____

[3]     While the affirmative defense of *res judicata* generally cannot be brought
in a motion to dismiss, the Fifth Circuit has held that "[i]f, based on the facts
pleaded and judicially noticed, a successful affirmative defense appears, then
dismissal under Rule 12(b)(6) is proper."  *Hall v. Hodgkins*, 305 Fed. App'x 224, 227-
28 (5th Cir. 2008) (citing *Kansa Reinsurance Company, Ltd. v. Congressional Mortgage
Corporation of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).  Here, because all relevant
facts for determining *res judicata* appear on the face of the pleadings and documents
subject to judicial notice, the court proceeds to consider the defendant's *res judicata*
argument.

[4]     The court also notes that Thompson has not challenged the propriety of
(continued...)

When a federal court considers the preclusive effect of a state court's prior judgment, the federal court applies the preclusion law of the state where the judgment was rendered. *Cooper v. City of Dallas, Texas*, No. 3-04-CV-2407-N, 2008 WL 3380554, at *4 (N.D. Tex. Aug. 11, 2008) (Kaplan, M.J.), *aff'd*, 402 Fed. App'x 891 (5th Cir. 2010), *cert. denied*, 563 U.S. 949 (2011).  Under Texas law, *res judicata* requires that:

> (1) there is a prior final judgment on the merits by a court of competent jurisdiction;
>
> (2) the parties in the two actions are identical or in privity with each other; and
>
> (3) the second action is based on the same claims that were raised, or could have been raised, in the first action.

*Id.* (citing *Citizens Insurance Company of America v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)).  Neither Thompson nor the City dispute that both suits involve the same parties.  Thompson sued the City in state court and does the same here. Amended State Petition at 1; Complaint at 1.  Even if the court permitted Thompson to amend her complaint to name the City of Dallas as the proper defendant, the defendants in the two suits would differ in name only.  The City of Dallas likely

---

⁴(...continued)
the City raising an affirmative defense in its motion to dismiss, and thus waives this argument.  See *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005) (reviewing the appellees' *res judicata* argument under the 12(b)(6) standard because the appellant did not challenge the appellees' ability to do so), *cert. denied*, 547 U.S. 1055 (2006); *Hall*, 305 Fed. App'x at 227 (same).

exercises control over the City Attorney's Office and the City of Dallas's interests are sufficiently represented in the state action.  See *HECI Exploration Company v. Neel*, 982 S.W.2d 881, 890 (Tex. 1998) (stating that, in determining privity, courts look to the control of one party over another, whether a party's interests are adequately represented, or whether the parties are successors in interest).  Accordingly, only elements (1) and (3) of the *res judicata* test must be examined.

### b.  Final Judgment on the Merits

The City asserts that there was a prior final judgment given the state court's summary judgment in its favor on April 18, 2017.  Defendant's Reply at 4. Thompson contends that the judgment was not on the merits.  Plaintiff's Reply at 3. Specifically, and without any authority, Thompson contends that the state court's decision was not final because it was grounded in delayed service of process.  *Id.*  The court addresses both the finality and merits of the judgment below.

"To be a final judgment, a summary judgment must dispose of all the parties and issues in a lawsuit."  *McGowen v. Huang*, 120 S.W.3d 452, 461 (Tex. App.-- Texarkana 2003, pet. denied) (citing *Chase Manhattan Bank, N.A. v. Lindsay*, 787 S.W.2d 51, 53 (Tex. 1990)).  Here, the state court's summary judgment disposed of all the issues between the two parties.  The City's motion for summary judgment explicitly requests that "summary judgment be entered in its favor on each and every claim asserted against it."  Motion for Summary Judgment at 8.  The state court

granted the requested relief without any indications to the contrary. *See* State Court Order and Final Judgment. Additionally, the order dismisses Thompson's claims "with prejudice," see *id.*, further establishing the finality of the judgment. See *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) (per curiam) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits.").

In terms of timing, a judgment becomes final when the trial court loses its plenary power over the judgment. *Maffitt v. Weycer, Kaplan, Pulaski & Zuber, P.C.*, No. 01-97-01031-CV, 1999 WL 695580, at *5 (Tex. App.--Houston [1st Dist.] Sept. 9, 1999, no pet.) (citing *Scurlock Oil Company v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986)). A trial court loses plenary power over its judgment thirty days after it signs its judgment, or thirty days after it denies a motion for a new trial if such a motion is filed. *Id.* at 6 (citing Tex. R. Civ. P. 329b). Here, Thompson filed a motion for a new trial that was denied on June 16, 2017. *See* Order -- Deny (2). Because it has been thirty days since the denial of a new trial, and because the state court's summary judgment disposed of all issues and parties in the lawsuit, the court concludes that there has been a prior final judgment.

Thompson argues that the prior judgment was not on the merits because it was grounded in service of process. Plaintiff's Reply at 3. However, summary judgment is a judgment on the merits that has *res judicata* effect. *Fernandez v. Memorial Healthcare System, Inc.*, 896 S.W.2d 227, 231 (Tex. App.--Houston [1st Dist.] 1995,

writ denied).  Thompson cites no authority for her claim that the state court's

judgment was not on the merits simply because it was related to service of process.

To the contrary, Texas courts have granted summary judgment due to a party's

failure to serve process in a timely manner, with no indication that the resulting

summary judgment was not on the merits.  See *Windle v. Mary Kay, Inc.*, No. 05-02-

00252-CV, 2003 WL 21508782, at *2-3 (Tex. App.--Dallas July 1, 2003, pet.

denied) (affirming summary judgment in favor of the employer because the employee

failed to serve process with due diligence within the 60-day limitations period

established by Texas Labor Code § 21.254); *Perry v. Kroger Stores, Store No. 119*, 741

S.W.2d 533, 536 (Tex. App.--Dallas 1987, no writ) (affirming summary judgment

based on the plaintiff's failure to serve the defendant within the limitations period).

Thus, the court concludes that there was a final judgment on the merits.[5]

### c.  Same operative facts

Thompson also argues that her EPA claim does not rely on the same operative

facts as her discrimination and retaliation claims.  Plaintiff's Response at 6.  In

determining *res judicata*, the relevant inquiry is whether the subsequent suit "arises

---

[5]        Even though Thompson contends that the state court's judgment on the merits was improper, this court's conclusion does not change because "[t]he question whether that judgment on the merits was correct . . . does not enter into our inquiry on the subject of *res judicata*, for even an incorrect judgment is entitled to *res judicata* effect."  *Proctor & Gamble Company v. Amway Corporation*, 376 F.3d 496, 500 (5th Cir. 2004).

out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Savings*, 837 S.W.2d 627, 631 (Tex. 1992). To determine if a set of claims arise out of the same subject matter, Texas adopts the Restatement's transactional approach, which looks at whether the underlying facts of both cases are related in time, space, and motivation. *Id.* Under the transactional test, courts have found separately filed allegations for different types of employment discrimination or misconduct to constitute a common cause of action for purposes of preclusion. See *Nelson v. AMX Corporation*, No. CIV. 3:04-CV-1350-H, 2005 WL 2495343, at *6 (N.D. Tex. Sept. 22, 2005) (Sanders, J.) (holding that the plaintiff's Title VII and EPA claims arose from the same transaction as her contract claim for the denial of a discretionary bonus because they arose out of the same employment relationship, "at the same time among the same players at the same events"), *aff'd*, 227 Fed. App'x 363 (5th Cir. 2007); *Cooper*, 2008 WL 3380554, at *5-6 (holding that an employee's state claims challenging an administrative decision denying her back pay and benefits arose out of the same subject matter as her federal claims alleging employment discrimination, sexual harassment, and retaliation because both were based on "the terms and conditions of her employment with the City and ultimate separation therefrom").

- 13 -

Here, the City correctly asserts that Thompson's federal claims, including her EPA claim, arise out of the same core set of facts as her state claims. Both of Thompson's suits are based on her treatment as an employee of the City. *See* Amended State Petition; Complaint. In fact, Thompson's Title VII and ADEA claims rely on an identical recitation of facts as her Texas Labor Code claim, and the statements of the claims themselves are nearly identical. Amended State Petition ¶¶ 6-29; Complaint ¶¶ 4-30. Thompson's EPA claim relies on just two additional lines attached to the otherwise duplicate statement of facts. Complaint ¶ 32. In these two lines, Thompson adds that she was paid less than her male co-workers in the General Litigation Division despite performing the same work under equal working conditions. *Id.* However, Thompson also relies on the nature of her work and working conditions in the General Litigation Division as the basis of her state employment discrimination and retaliation claims. Amended State Petition ¶¶ 23, 29. For example, Thompson's state suit describes how she was given busy work, refused training, and generally harassed while in the General Litigation Division. *Id.* While the EPA claim and Texas Labor Code claim may constitute different forms of action, in this case, both allegations arise from the same employment relationship, "at the same time among the same players among the same events." *Nelson*, 2005 WL 2495343, at *6. Thus, the court concludes that Thompson's federal claims arise out of the same transaction as Thompson's state claims, and are barred by *res judicata*.

2.  *Rule 15(c) Motion for Leave to Amend*

The court concludes that permitting amendment of the complaint would be futile because, as Thompson herself makes clear, the proposed complaint does not amend any of the substantive claims that are the subject of the pending motion to dismiss.  Plaintiff's Reply at 2 n.2.  Thompson only seeks to address a misnomer and name the defendant as the City of Dallas instead of the Dallas City Attorney's Office. *Id*.  Because the amended complaint would still be subject to dismissal under *res judicata*, the court denies Thompson's motion for leave to amend.

### III.  <u>CONCLUSION</u>

For the reasons stated above, the defendant's motion to dismiss is **GRANTED** and the plaintiff's motion to amend is **DENIED**.

**SO ORDERED**.

July 27, 2017.

**A. JOE FISH**
**Senior United States District Judge**

- 15 -